IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 15-cv-00031-CBS

ROBIN J. BRYAN,
        Plaintiff,
v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,
        Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This civil action comes before the court pursuant to Titles II and XVI of the Social Security

Act ("the Act"), 42 U.S.C. §§ 401-33 and 1381-1383c, for review of the Commissioner of Social

Security's final decision denying Ms. Bryan's application for Supplemental Security Income

("SSI") and Social Security Disability Income ("SSDI") benefits. [1]  Pursuant to the Order of

Reference dated June 25, 2015, this civil action was referred to the Magistrate Judge "for all

purposes" pursuant to the Pilot Program to Implement the Direct Assignment of Civil Cases to

Full Time Magistrate Judges and Title 28 U.S.C. § 636(c).  (*See* Doc. # 22).  The court has

reviewed the Complaint, Defendant's Answer, Plaintiff's Opening Brief, Defendant's Response

Brief, the administrative record, the entire case file, and the applicable law and is sufficiently

advised in the premises.

---

[1] SSDI pays benefits to people with disabilities who have worked and paid Social Security taxes on their earnings.  SSI pays benefits to people with disabilities whose income and resources are below set limits.  Benefits payable under Title II (SSDI) are based on earnings history and are generally higher than those for Title XVI (SSI).  There are also restrictions and exclusions attached to Title XVI that are not attached to Title II.  Some people with disabilities receive both SSDI and SSI benefits because their SSDI benefits are below the SSI payment level.  Regulations for Title II are found at 20 C.F.R. §404; those for Title XVI are found at 20 C.F.R. §416.

I.      Procedural History

Ms. Bryan filed an application for SSDI benefits with a protective filing date of April 2,

2012.[2]  (*See* Administrative Record ("Tr.") (Doc. # 13) at 166-167, 168-170).  She filed an

application for SSI benefits on April 10, 2012.  (Tr. 156-165, 171-178, 179-181).  She claimed

that she became disabled on March 11, 2012.  (Tr. 168, 171).  Her claims were denied on

August 20, 2012 and she requested a hearing before an Administrative Law Judge ("ALJ").  (Tr.

60-61, 62-75, 76-89, 92-95, 97-100, 101).  ALJ Patricia E. Hartman held a hearing on August

21, 2013.  (Tr. 33-58).  Ms. Bryan was represented by counsel and testified at the hearing.  (Tr.

91, 155, *id.*).  Ms. Deborah Christensen testified at the hearing as a Vocational Expert ("VE").

(Tr. 53-58, 147).  The ALJ issued her written decision on September 16, 2013, concluding that

Ms. Bryan was not disabled within the meaning of the Act.  (Tr. 17-28).  Ms. Bryan sought

review of the ALJ's decision on October 16, 2013.  (Tr. 15-16).  The Appeals Council afforded

her an extension of time, received additional evidence and on November 5, 2014 denied her

request for review.  (Tr. 1-5).  Ms. Bryan filed this civil action on January 6, 2015.  (*See* Doc. #

1).  The court has jurisdiction to review the final decision of the Commissioner.  42 U.S.C. §

405(g).


II.     Standard of Review

In reviewing the Commissioner's final decision, the court must "closely examine the

record as a whole to determine whether the . . . decision is supported by substantial evidence

and adheres to applicable legal standards."  *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996)

---

[2] To qualify as an effective claim, an application for SSI benefits must be submitted on a prescribed form.  20 C.F.R. § 404.610.  However, a written statement indicating a person's intent to claim benefits can, if it meets certain requirements, establish a protective filing date.  *Id.* § 404.630.

(internal quotation marks and citation omitted).  *See also Williams v. Bowen*, 844 F.2d 748, 750

(10th Cir. 1988) (court "must determine whether the . . .  decision of nondisability, . . . is

supported by substantial evidence, *i.e.*, such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion") (internal quotation marks and citation omitted).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial

evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court "must affirm . . . if the decision is

supported by substantial evidence."  *Eggleston v. Bowen*, 851 F.2d 1244, 1246 (10th Cir. 1988)

(citing 42 U.S.C. § 405(g)).  "A decision is not based on substantial evidence if it is overwhelmed

by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Bernal v.*

*Bowen*, 851 F.2d 297, 299 (10th Cir.1988).  The court "may neither reweigh the evidence nor

substitute [its] judgment for that of the agency."  *White v. Massanari*, 271 F.3d 1256, 1260 (10th

Cir. 2001), *as amended on denial of reh'g* (April 5, 2002).  *See also Lax v. Astrue*, 489 F.3d

1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the

evidence does not prevent an administrative agency's findings from being supported by

substantial evidence.") (internal quotation marks and citation omitted);  *Mounts v. Astrue*, No.

11-1172, 479 F. App'x 860, 867 (10th Cir. May 9, 2012) (court cannot reweigh the evidence and

come to a different conclusion than the ALJ) (citation omitted).


III.    Analysis

An individual "shall be determined to be under a disability only if his physical or mental

impairment or impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A); §

1382c(a)(3)(B).  The Commissioner has developed a five-step evaluation process for

determining whether a claimant is disabled under the Act.  *See Williams*, 844 F.2d at 750-52

(describing the five steps in detail).  "The claimant bears the burden of proof through step four of

the analysis."  *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).  "If a determination can

be made at any of the steps that a claimant is not disabled, evaluation under a subsequent step

is not necessary."  *Williams*, 844 F.2d at 750.  In the first three steps, the Commissioner

determines whether claimant has engaged in substantial gainful activity since the alleged onset,

whether she has severe impairments, and whether the severity of her impairments meets or

equals the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  *Id.* at 750–51.

If plaintiff's impairment does not meet or equal a listed impairment, the evaluation

proceeds to step four, where the Commissioner assesses a claimant's Residual Functional

Capacity (RFC), 20 C.F.R. §§ 404.1520(e), 416.920(e), and the claimant must establish that he

does not retain the RFC to perform his past relevant work.  *Pipkins v. Colvin*, No. CIV-14-136-

RAW-KEW, 2015 WL 3618281, at *1, n. 1 (E.D. Okla. June 9, 2015).  The RFC is what a

claimant is still "functionally capable of doing on a regular and continuing basis, despite his

impairments; the claimant's maximum sustained work capability."  *Williams*, 844 F.2d at 751.  At

step four of the five-step analysis, "a claimant's RFC is measured against the physical and

mental demands of the claimant's past relevant work to determine whether the claimant can

resume such work."  *Barnes v. Colvin*, No. 14-1341, 2015 WL 3775669, at *2 (10th Cir. June 18,

2015) (internal quotation marks omitted) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th

Cir.1996) (noting that the step-four analysis includes three phases: (1) "evaluat[ing] a claimant's

physical and mental [RFC]"; (2) "determin[ing] the physical and mental demands of the

claimant's past relevant work"; and (3) ascertaining "whether the claimant has the ability to meet the job demands found in phase two despite the [RFC] found in phase one.")).

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five the existence of a significant number of jobs in the national economy that a claimant can perform given his RFC, age, education, and work experience.  *Neilson*, 992 F.2d at 1120.

> . . . The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the claimant has the RFC to perform.  In this context, work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy.  To determine the claimant's "RFC category," the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work). . . .
>
> If a conclusion of "not disabled" results, this means that a significant number of jobs exist in the national economy for which the claimant is still exertionally capable of performing. . . .

*Williams*, 844 F.2d at 751-52. (citations omitted).  The Commissioner can meet the burden of showing that there is other work in significant numbers in the national economy that claimant can perform by the testimony of a VE.  *Tackett v. Apfel*, 180 F.3d 1094, 1098–1099, 1101 (9th Cir.1999).  "Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work."  *Pipkins v. Colvin*, 2015 WL 3618281, at *1, n.1.

Ms. Bryan was 42 years old at the time she applied for disability benefits and thus considered a "younger person."  (*See* 20 C.F.R. § 404.1563, Tr. 31).  She graduated from high school.  (Tr. 40).  She is married and has two adult children.  (Tr. 39).  She worked as a hotel manager, reservation specialist, and vacation rental specialist, among other things, until March 11, 2012.  (Tr. 40-42, 246-258).  The ALJ determined that Ms. Bryan: (1) had not engaged in

substantial gainful activity since the alleged onset date of disability, March 11, 2012, (2) had as

severe impairments "degenerative disc disease of the lumbar spine, status post fusion at level

L4-5, irritable bowel syndrome, and headaches," and (3) did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the listed

impairments in Title 20, Chapter III, Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d),

404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  The ALJ determined that Ms. Bryan

had the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently, to sit, stand,

and walk six hours each in an eight-hour workday, to push and pull as much as she can lift and

carry, to occasionally climb ramps and stairs, but not ladders or scaffolds.  (Tr. 23).  She also

determined that Ms. Bryan had the RFC to understand, remember, and carry out instructions at

a job with a maximum Specific Vocational Preparation ("SVP") of four.  (Tr. 23).  The ALJ found

that she could not kneel or crawl or work at unprotected heights, with dangerous unprotected

machinery, or with vibrating tools.  (Tr. 23).  The ALJ relied on the testimony of the VE to reach

her decision at step five that Ms. Bryan could perform her past relevant work as a reservation

clerk as customarily performed in the national economy.  (Tr. 22, 26-27).  The ALJ concluded

that Ms. Bryan was not disabled.  (Tr. 27-28).  Ms. Bryan alleges that the ALJ erred by: (1)

failing to adequately develop the record regarding her impairments, (2) failing to account for her

use of a cane, and (3) failing to consider whether the evidence supported a period of disability of

12 months or more in the past.  (See Doc. # 16).

A.     Duty to Develop the Record

        Ms. Bryan argues that the ALJ should have developed the record further as to the

medical records that post-dated the hearing before the ALJ.  "It is well established that a Social

Security disability hearing is a nonadversarial proceeding, in which the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993) (internal quotation marks and citations omitted).  "Under normal circumstances, the ALJ may reasonably rely on counsel to identify the issue or issues requiring further development." *Wall v. Astrue*, 561 F.3d 1048, 1063 (10th Cir. 2009) (internal quotation marks and citation omitted). "Moreover, a claimant need not only raise the issue she seeks to develop, but that issue must also be substantial on its face." *Id.*  "Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Id.*  (citations omitted).

When the ALJ asked "is there any new medical evidence in the past -- well, since May of last year?," Ms. Bryan's counsel responded that

> she's had a few appointments this year at -- with the doctor that's treating her that currently submitted these MSSs.  I think she said she's had four.  But I don't think there's -- it significantly adds to the record.  Most -- the majority of her records are from 2012 and 2011, where most of the stuff was going on.  Those have been follow-up appointments, medication refills, things like that.

(Tr. 38).  Ms. Bryan did not raise the issue of further developing the record to the ALJ.  *See Wall*, 561 F.3d at 1063 (requiring claimant to raise a substantial issue to trigger ALJ's duty to develop the record).  Where the claimant was represented by counsel at the hearing before the ALJ, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored," and "may ordinarily require counsel to identify the issue or issues requiring further development." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (citation omitted).  "Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on

the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ

for not performing a more exhaustive investigation." *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th

Cir. 2008).  Ms. Bryan does not suggest what the medical records of the four appointments that

post-dated the hearing would have demonstrated regarding her alleged disability.  *See Watson*

*v. Barnhart*, 194 F. App'x 526, 530 (10th Cir. 2006) (rejecting argument that ALJ failed to

develop the record where claimant did not suggest what the omitted evidence might reveal and

her attorney did not mention at the hearing the evidence that she complains was missing).

Moreover, under the governing regulations, the ALJ was required to develop claimant's medical

history only for the twelve months preceding the month in which she filed her application "unless

there is a reason to believe that development of an earlier period is necessary." 20 C.F.R. §

404.1512(d), § 416.912(d).  Ms. Bryan filed her applications in April 2012 and has made no

showing that the ALJ did not properly develop her medical history for the preceding twelve

months.  The court is not convinced that the ALJ was required to obtain the records of four

medical appointments that post-dated the hearing in order to properly evaluate Ms. Bryan's

impairments.  The court concludes that there was an adequate record on which the ALJ could

decide this case and finds no error on this issue.


B.      Ms. Bryan's Use of Cane

Ms. Bryan alleges that the ALJ erred by rejecting Dr. Sara Charnecki, M.D.'s opinion that

she sometimes needed to use a cane for standing/walking and failing to consider the use of a

cane when assessing her RFC.  (*See* Doc. # 16 at 8 of 17).  *Williams*, 844 F.2d at 751.  "In

making the RFC assessment, an ALJ considers how an impairment, and any related symptoms,

may cause physical and mental limitations that affect what a claimant can do in a work setting."

*Davison v. Colvin*, No. 14-1122, 596 F. App'x 675, 680 (10th Cir. 2014) (citing 20 C.F.R. §

404.1545(a)(1)).  The RFC represents "the most [a claimant] can still do despite [his]

limitations."  *Id.*  "The RFC assessment is made based on all the evidence in the record, both

medical and non-medical."  *Id.*

At the hearing before the ALJ, Ms. Bryan testified that she had been using a case for

three months.  (Tr. 45).  Ms. Bryan did not use a cane until approximately May of 2013.  (Tr. 45).

The only reference to a cane in the medical evidence is Dr. Charnecki's opinion dated August

16, 2013 that Ms. Bryan must use a cane while engaging in occasional standing/walking.  (Tr.

531).  There is no other reference in the record to the use of a cane.  After Ms. Bryan finished

testifying, the ALJ posed a hypothetical question to the VE concerning her ability to perform

work in the national and local economy.  She asked the VE to assume

> an individual who is restricted to light work, can occasionally climb ramps and
> stairs but cannot climb ladders or scaffolds, cannot kneel or crawl; cannot work at
> unprotected heights, with dangerous unprotected machinery or vibrating tools;
> would need work with a maximum SVP of 4.

(Tr. 55).  As to Ms. Bryan's use of a cane, she observed: "[h]er doctor prescribed a cane about

three months prior to the hearing" and "opined that the claimant needed to use a cane."  (Tr. 24,

26).  The VE responded to the hypothetical that Ms. Bryan could perform the light, semi-skilled

job of reservation clerk or the light, unskilled jobs of cashier, assembler of small products, and

ticket seller.  (Tr. 55).  If all of the limitations described in Ms. Bryan's testimony were accepted,

they would preclude all competitive work.  (Tr. 56-58).  The ALJ accorded "little weight" to Dr.

Charnecki's opinion and found that Ms. Bryan had the RFC to perform her past relevant work.

(Tr. 26).  The ALJ assigned Ms. Bryan the same RFC as that described in her hypothetical

question to the VE.  She also accepted the VE's description of the jobs Ms. Bryan could

perform.  Ms. Bryan argues that her "need for a cane is supported by her protracted history of

back pain" and inherently limits her ability to reach and handle.  (*See* Doc. # 16 at 8-9 of 17).

The record does not support this argument.

The record shows a history of a fall in November 2007 and a back surgery on January

29, 2008.  (Tr. 292, 352).  In April of 2010, Ms. Bryan was seen by Myra Thompson, Nurse

Practitioner, for a cough.  (Tr. 408-409).  She did not mention back pain.  (*Id.*).  At that time, she

was seeking employment.  (Tr. 408).  In July of 2010, Ms. Bryan was seen by Ms. Thompson for

a "comprehensive medical review and exam."  (Tr. 434).  She complained of significant back

pain.  (Tr. 434).  Examination revealed normal gait and station, normal kyphosis and lordosis in

the thoracic and lumbar spine, respectively, no tenderness over the spinous processes or in the

paraspinal muscles, ROM is grossly normal, and strength and tone are normal.  (Tr. 436).  She

was instructed to call to set up an MRI.  (Tr. 436).  In August of 2010, Ms. Bryan was working 16

hours per day at a new job, with lots of stair climbing.  (Tr. 443).  She complained of pain and

swelling in her feet and legs, but did not mention back pain.  (Tr. 443-444).  She was

encouraged to wear her support stockings every day.  (Tr. 44).

In February of 2011, Ms. Bryan complained of fatigue and not sleeping well, but did not

mention back pain.  (Tr. 461-462).  She was prescribed additional sleep medication.  (Tr. 462).

In March of 2011, Ms. Bryan was seen in the emergency department of Samaritan North Lincoln

Hospital in Lincoln City, Oregon for chest pain.  (Tr. 361).  A thoracic spine x-ray demonstrated

a mild compression fracture at T9 that appeared old.  (Tr. 362, 368).  She was discharged in

stable and improved condition.  (Tr. 362).  An MRI of the thoracic spine that was performed on

April 25, 2011 revealed normal findings at all but T5-T6, T8-T9 and T10-T11.  At T5-T6, T8-T9

and T10-T11, "early changes of degenerative disc disease" were present.  (Tr. 358-359).  "Old

superior end-plate fracture compression deformity" was noted at the level of T9.  (Tr. 358-359).

10

There was "no evidence for spinal stenosis, extruded disc fragments or neuroforaminal encroachment." (Tr. 358). "The thoracic vertebral bodies demonstrate normal bone marrow signal intensity. There is no evidence for new fracture or bone abnormalities. The thoracic spinal cord demonstrates normal morphology and normal signal characteristics." (Tr. 359). Ms. Bryan was seen by Ms. Thompson on May 17, 2011, to "go over results." (Tr. 477). She reported significant neck and low back pain that worsened when she had to do physical labor at her job at a motel. (Tr. 477). She had quit her job at the motel due to overwork. (Tr. 477). She was prescribed rest. (Tr. 478).

In June of 2011, Ms. Bryan was seen by Ms. Thompson "to re-apply for SSI." (Tr. 483). Ms. Thompson noted "moderate tenderness to palpation over posterior neck from about C3-C6 without noted defect." (Tr. 484). Ms. Thompson noted "moderately tender to palpation over T11-12 through L3-4 with radiation into both hips. Straight leg raises with pain noted left leg at about 30 degrees right leg at about 40 degrees." (Tr. 484).

On August 12, 2011, Ms. Bryan was seen in the emergency department of Samaritan North Lincoln Hospital for back pain after she slipped when stepping out of the shower. (Tr. 352). A CT scan of the T-spine and x-ray of the L-spine were "unremarkable." (Tr. 353, 356). No significant change had occurred in the condition of her spine since thoracic and lumbar spine x-rays were performed in March of 2011. (Tr. 354-355). She was diagnosed with a back strain and stable mild degeneration, and discharged in "good condition." (Tr. 353-355).

On September 8, 2011, Ms. Bryan had additional cervical and lumbar spine x-rays for a disability determination. (Tr. 349-350). The results were an "[u]nremarkable radiograph of the cervical spine" and a mostly unremarkable examination of the lumbar spine. (Tr. 349-350). There was no change and no acute abnormality. (Tr. 349-350). Other than Ms. Bryan's

11

subjective reports, the medical records do not further address her alleged back impairment. (*See, e.g.*, Tr. 505, 508, 511-526).  Ms. Bryan continued to work until March 11, 2012.

Dr. Charnecki's opinion that Ms. Bryan needed a cane is not consistent with the substantial evidence in the record.  The record contains no medical evidence after Ms. Bryan's onset date, only opinion evidence.  Numerous treatment notes indicated that Ms. Bryan could walk without a cane.  *See Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (ALJ reasonably discounted physician opinions in light of other evidence of claimant's capabilities).  The record does not contain any medical records from Dr. Charnecki.  The Social Security regulations require more than generalized evidence of a condition that might require use of a cane.  *See Staples v. Astrue*, 329 F. App'x 189, 192 (10th Cir. 2009) (quoting SSR 96–9p, 1996 WL 374185, at *7 (requiring "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed.").

The ALJ's decision to discount Ms. Bryan's need for a cane was based on substantial evidence in the record.  *See Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002) (because substantial evidence in the record supports the ALJ's determination that a cane was not necessary, it cannot be considered an exertional limitation that reduced claimant's ability to work).  The ALJ's hypothetical question to the VE was proper because it included the limitations the ALJ found credible and supported by the record as a whole.  The ALJ was entitled to rely upon the VE's responses as substantial evidence for her step 5 determination.  The court finds no error on this issue.

C.      Period of Disability of Twelve Months or More in the Past

Ms. Bryan argues that even if she were not disabled between the March 11, 2012 onset

date and the date of the ALJ's decision, the ALJ should have also considered whether she was

disabled for at least a twelve month period prior to the onset date.  (See Doc. # 16 at 15-16 of

17).  Ms. Bryan was working from August 2010 to May 2011 and again from November 2011 to

March 2012.  (Tr. 209).  A person who is performing substantial gainful activity is not disabled

under the Act.  §§ 216(i), 1614(a)(3)(A), 20 C.F.R. §§ 404.1520, 416.920 (2014).  "Substantial

gainful activity" is defined in the regulations as "work that (a) [i]nvolves doing significant and

productive physical or mental duties; and (b) [i]s done (or intended). for pay or profit."  20 C.F.R.

§ 404.1510; § 416.910.  *See also* 20 C.F.R. § 404.1572, § 416.972.  It is undisputed that Ms.

Bryan engaged in substantial gainful activity.  (*See, e.g.*, Tr. 40–42, 187, 210–11).  Ms. Bryan

specifically alleged that her disability began on March 11, 2012 and filed her applications in April

of 2012.  (Tr. 171).  The ALJ was limited to considering the period of time beginning on March

11, 2012 and prohibited from awarding benefits based on a closed period of disability prior to

that date.  *See* § 216(i) ("no period of disability shall begin as to any individual unless such

individual files an application for a disability determination with respect to such period");  20

C.F.R. § 416.335 ("the earliest month for which we can pay you benefits is the month following

the month you filed the application").  Based on Ms. Bryan's work history and the onset date

alleged in her applications, the ALJ did not err by failing to consider whether the evidence

supported a period of 12 months or longer that she was disabled prior to March 11, 2012.  The

court finds no error on this issue.

IV.     Conclusion

The Commissioner's determination that Ms. Bryan is not disabled is "clearly and affirmatively linked . . . to substantial record evidence. . . ." *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (citation omitted).  The Tenth Circuit's "precedents do not require more" and the "limited scope of review precludes [this court] from reweighing the evidence or substituting [its] judgment for that of the" Commissioner.  *Id.* (internal quotation marks and citation omitted).  The court is satisfied that the ALJ considered all relevant facts and that the record contains substantial evidence from which the Commissioner could properly conclude that Ms. Bryan was not disabled within the meaning of Titles II and XVI of the Social Security Act.

Accordingly, IT IS ORDERED that the Commissioner's final decision is AFFIRMED and this civil action is DISMISSED, with each party to bear her own attorney fees and costs.

DATED at Denver, Colorado, this 4th day of March, 2016.

BY THE COURT:


    s/Craig B. Shaffer
United States Magistrate Judge